# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JERRY W. PAULK,            )
                          )
        Plaintiff,        )
                          )
v.                        )        Civil Case No. 12-1164 (RJL)
                          )
ARCHITECT OF THE CAPITOL, )
                          )
        Defendant.        )

**FILED**

FEB 0 3 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(February **3**, 2015) [Dkt. ##18, 33]

Plaintiff Jerry W. Paulk ("plaintiff" or " Paulk") commenced this action against

the Architect of the Capitol ("defendant" or "AOC") on July 17, 2012, seeking damages

for alleged violations of the Congressional Accountability Act of 1995 ("CAA"), 2

U.S.C. §§ 1301 *et seq. See* Compl. ¶ 2. [Dkt. #1]. Now before the Court is defendant's

Motion for Summary Judgment. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt.

#18]. Upon consideration of the parties' pleadings, the entire record in this case, and the

relevant law, the Court GRANTS defendant's Motion for Summary Judgment and

dismisses this action in its entirety.[1]

## BACKGROUND

Plaintiff is an electrician who was employed by defendant AOC as a night shift

temporary employee in the House Office Buildings ("HOB") for approximately thirteen

---

[1] Also pending is plaintiff's motion for leave to file a surreply [Dkt. #33]. The Court GRANTS
plaintiff's motion and has considered plaintiff's surreply and defendant's response thereto [Dkt.
#35] in its disposition of this case.

years. *See* Compl. ¶¶ 8-9. During his tenure, plaintiff worked on a number of Emergency Lighting Projects in the Longworth and Rayburn House Office buildings. *See* Def.'s Mot. Ex. 3 at 28:16-29:2 [Dkt. #18-3]. Plaintiff alleges that in August 2010, David Smith ("Smith") and Kevin Banks ("Banks")—both electrical division supervisors—ordered plaintiff and other night shift electricians to work in areas and with materials containing asbestos. Compl. ¶ 10. Although plaintiff and the other electricians objected to handling asbestos without proper safety equipment, they were warned by their supervisors that "there would be consequences for failing to do as instructed." Compl. ¶ 10. At the request of plaintiff's work partner, Richard Hutson, AOC's Inspector General ("OIG") launched an investigation into whether electricians were instructed to disturb asbestos-containing materials without proper safety precautions. Pl.'s Opp'n to Summ. J. ("Pl.'s Opp'n") at 3 [Dkt. #23]. The OIG interviewed plaintiff on April 22, 2011. Compl. ¶ 13. Plaintiff's employment was terminated in June 2011. Compl. ¶ 15; Def.'s Stmt. Material Facts Not In Dispute ("Def.'s SMF") ¶ 10 [Dkt. #18-19]. Believing that he was terminated because of his OIG testimony, plaintiff sought counseling with the Office of Compliance ("OCC") and was reinstated to his temporary position in November 2011. Def.'s SMF ¶¶ 10-11.

Meanwhile, between 2010 and 2011, in the wake of budgetary restrictions, HOB sought to re-structure its night shift electrician staff by creating three permanent electrician positions. *See* Def.'s Mot. Ex. 14 ("Riley Decl.") ¶¶ 8 [Dkt. #18-16]; Def.'s Mot. at 28. On November 29, 2011, HOB published a Vacancy Announcement seeking to fill these three vacancies from a pool of AOC employees. *See* Def.'s Mot. Ex. 8a

2

("Vacancy Announcement") [Dkt. #18-8]. The Vacancy Announcement stated that applicants would "be evaluated on their ability to perform the duties of the position rather than [on the] length of [their] experience." Vacancy Announcement at 002. Human Resources identified ten AOC employees as potential candidates for the position. *See* Def.'s Mot. Ex. 16 at 4 [Dkt. #18-18]. Four of these candidates received interviews: (1) Robert Gallagher ("Gallagher"), who is Caucasian, (2) Omega Armah ("Armah"), who is African American, (3) Terrence Jones ("Jones"), who is African American, and (4) plaintiff Paulk, who is Caucasian. Def.'s SMF ¶ 17. A panel consisting of Supervisor Banks, HOB Electrical Shop Supervisor Adeyemi ("Adeyemi"), and Assistant HOB Superintendent Murphy ("Murphy") (collectively, the "HOB panel" or "panel") conducted the interviews. Def.'s SMF ¶ 13. Adeyemi served as the selecting official. Def's Mot. Ex. 5 ("Adeyemi Dep.") at 12:10 [Dkt. #18-5].

   After conducting the interviews, the HOB panel ranked each candidate and selected two of the four candidates for permanent employment. Specifically, the panel selected Armah, who held a Journeyman's license from the state of Maryland, and Gallagher, who held a Level IV Fire Alarm Technician Certificate from the National Institute of Certification of Engineering Technologies ("NICET"). *See* Def.'s SMF ¶ 20; Def.'s Mot. Ex. 8b at AOC 117, 119, 218, 220-22 [Dkt. #18-9]. Neither Paulk, who received the third highest interview score, nor Jones, was selected.[2] *See* Def.'s SMF ¶ 27.

---

[2] Plaintiff alleges that after the interviews concluded, the HOB panel destroyed records pertaining to its selection, including the answer sheet scoring candidates' interview responses,

After filling two of the three vacancies, the panel requested a new referral list from which to select the third employee. Def.'s SMF ¶ 23. Human Resources' second referral list did not include either Paulk or Jones. Def.'s SMF ¶ 23. After completing its evaluation process, the HOB Panel selected Jabbar Sisney, an African American male, who, in addition to receiving Union training was in the process of obtaining his journeyman license. Def.'s SMF ¶¶ 28-29. After selecting the three permanent electricians, the HOB managers terminated the entire night shift temporary electrician work force. Def.'s SMF ¶ 31. Three of the seven terminated employees were African-American and four were Caucasian. *See* Def.'s Mot. Ex. 16 at 2; Def.'s SMF ¶ 32.

Plaintiff commenced the instant action against the AOC on July 17, 2012, alleging discriminatory and retaliatory practices in violation of the CAA.[3] *See generally* Compl. After discovery concluded, defendant moved for summary judgment under Rule 56 of the Rules of Civil Procedure. *See generally* Def.'s Mot. For the reasons set forth below, defendant's motion is GRANTED.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. Fed. R.

---

the interview scoring matrix and the panelists' justification memorandum explaining their selection. *See* Pl.'s Opp'n at 7.

[3] Plaintiff elected in his Opposition not to pursue his age discrimination claim (Count IV). Accordingly, this Court does not address the merits of that allegation. *See* Pl.'s Opp'n at 1, n.1.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court must accept

as true the evidence of, and draw "all justifiable inferences" in favor of, the party

opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).  Although district courts approach summary judgment in the employment

discrimination and retaliation context with "special caution," plaintiffs are not relieved of

the burden to support their claims with competent evidence.  *Brown v. Mills*, 674 F.

Supp. 2d 182, 188 (D.D.C. 2009).   Summary judgment is appropriate against a

nonmoving party that "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex*, 477 U.S. at 322.

The CAA, which makes Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.*, applicable to the legislative branch of the federal government,

prohibits "personnel actions" based upon racial discrimination and retaliation for

protected activities.  *See* 2 U.S.C. §§ 1302(a)(2), 1311(a), 1317(a).  Title VII makes it

unlawful for employers to "discriminate against any individual . . . because of such

individual's race."  42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits employers from

retaliating against employees that have engaged in protected activities by "testif[ying],

assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing."

42 U.S.C. § 2000e–3(a).

Until recently, the burden-shifting test articulated in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973) governed a court's inquiry when, as here, a plaintiff adduced

no direct evidence of discrimination or retaliation.  Under the *McDonnell Douglas*

framework, the complainant had to establish a prima facie case of discrimination. *See id.* at 802. Thereafter, the burden shifted "to the employer to articulate some legitimate, nondiscriminatory reason" for its conduct. *Id.* It was then incumbent on the plaintiff to show that the employer's proffered reason was pretextual. *Id.* at 804. Our Circuit, however, has simplified this inquiry. Under the revised approach, if the employee has suffered an adverse employment action, and the employer proffers a "legitimate," nondiscriminatory reason for the adverse employment action, the court "need not—*and should not*—decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2008) (applying *Brady* to Title VII retaliation claims). The sole issue for the Court is retaliation or discrimination *vel non*, and becomes, in essence, a question of whether a reasonable jury could find that the employer's asserted rationale "was the actual reason" for its actions. *See Brady*, 520 F.3d at 494.

## ANALYSIS

Plaintiff here alleges two adverse employment actions: his non-selection to the roster of permanent electricians, and his termination as a temporary night shift employee. Discussing each adverse action in turn, I find that plaintiff has not shown a genuine issue of material fact that defendant's actions violated the CAA.

### I.   Non-Selection

Plaintiff claims that he was not selected as a permanent electrician because of his Caucasian race and his participation in protected activities. Defendant has rebutted these

6

claims with a legitimate, non-discriminatory reason for plaintiff's non-selection, namely, that the selected electricians held superior qualifications. *See* Def.'s Mot. at 17-23. Armah, the first African-American selectee, completed a Union apprenticeship, was a Journeyman Electrician, and held a Master Electrician Certificate from the state of Maryland. *See* Def.'s Mot. Ex. 8b at AOC 221-22. Sisley, the second African-American selectee, completed Union training and, at the time of his interview, was working toward his Master's license. *See* Def.'s Mot. Ex. 8c at AOC 078, 082, 086 [Dkt. #18-10]. Gallagher, the Caucasian selectee, was similarly well qualified, having been certified as a Level IV Fire Alarm Technician by the NICET. *See* Def.'s Mot. Ex. 8b at AOC 119. Paulk, by contrast, held only a Level I certification from the National Burglar and Fire Association. *See* Def.'s Mot. Ex. 1 ("Paulk Dep.") at 12:11-23 [Dkt. #18-1].

In light of defendant's nondiscriminatory rationale for its hiring decision, the presumption of discrimination "simply drops out of the picture." *See Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). To survive summary judgment, plaintiff must show that a reasonable jury could nonetheless find discriminatory animus. *Holcomb v. Powell*, 433 F.3d 889, 896-97 (D.C. Cir. 2006). The Court's inquiry at this juncture is guided by "(1) the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." *Id.* at 897.

Although plaintiff might have relied on any of these three categories of evidence, he primarily challenges defendant's qualifications-based explanation. Plaintiff claims

that the HOB panel "downplayed" his prior work experience, scored his interview "unfairly" to justify its decision, and then "fabricated" his references to conceal its discriminatory motives.[4] *See* Pl.'s Opp'n at 22-24, 32-38. Plaintiff's claims are unavailing for several reasons. First, Title VII does "not hold employers liable for erroneous judgment, unless that judgment is motived by an illegal discriminatory motivation." *Phillips v. Holladay Prop. Servs., Inc.*, 937 F. Supp. 32, 37 (D.D.C. 1996). Put simply, charges of unfairness, no matter how well-founded, do not by themselves prove unlawful discrimination. *See Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 507 F. Supp. 2d 93, 110 (D.D.C. 2007) ("It may be that the decision to terminate the plaintiff was . . . on balance, unfair, but the plaintiff has provided no evidence at all that it was motivated by his employer's discriminatory intent, and that is the question that the Court must answer.").[5] Indeed, it bears emphasizing that federal courts are not empowered by the civil rights laws to referee each and every employment decision or dispute. Nor should they be—that is emphatically not the Court's role. Courts are not "super-personnel department[s] that reexamine[] an entity's business decisions," and must refrain from substituting their own opinions for those of an employer with

---

[4] The Court renders no judgment as to the merits of this allegation. Putting aside its highly speculative nature, it ignores evidence in the record that some of plaintiff's references may have been less than glowing. *See* Def.'s Reply at 19-20.

[5] The law on this point is overwhelming. *See, e.g., Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y.1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status."); *Grier v. Casey*, 643 F. Supp. 298, 308 (W.D.N.C.1986) ("The law is clear that an employer's reason for his action may be a good reason, a bad reason, a mistaken reason, or no reason at all, as long as the decision was not based on race and/or sex or other unlawful discriminatory criteria." (citing cases)).

particularized knowledge about its trade. *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (citation and internal quotation marks omitted).

The HOB panelists were thus free to—and apparently did—consider candidates' licensure, formal training, interview responses, and prior work experience as they saw fit. Whether it was *fair* for the panel to accord less weight to applicants' job experience than to other aspects of their applications is irrelevant. The issue before the Court is discrimination *vel non*, and plaintiff has not made even a colorable showing of such animus. The November 2011 Vacancy Announcement informed candidates that "[a]pplicants [would] be evaluated on their ability to perform the duties of the position rather than [on the] length of [their] experience." Vacancy Announcement at AOC 002. By selecting candidates with more formal training than practical experience, the panel hewed to this criterion.[6] The panel's focus on technical ability was, moreover, borne out in the interview process. Although plaintiff contends that his answers were "superior" to or, in some cases, equal to, those given by the selected candidates, *see* Pl.'s Opp'n at 34-35, there is evidence that plaintiff received lower scores than either of the selected candidates in skill-related categories, including in "Knowledge of Electrical and Electronic Theory and Instruments" and "Ability to Use and Maintain Hand Tools Used in Electrical Work," *see* Adeyemi Dep. at 120:13-121:5; 121:19-122:11. Whether the panel's scoring decisions were objectively "right" or "fair" is immaterial. They

---

[6] Plaintiff argues that defendant's reliance on the selectees' licensures is a post-hoc rationalization because "[t]he panelists testified that having a license would only have been important if the panel was attempting to make a choice between two otherwise equal candidates, which was not the case here." Pl.'s Opp'n at 27. However, regardless of whether licensure was dispositive, the record is clear that licensure was a component of the panel's calculus.

demonstrate that the panel had reservations about plaintiff's abilities as they compared to those of Gallagher and Armah. To coin this Circuit's logic, "[t]here is nothing the least bit fishy about the interviewers' giving slightly less emphasis to the applicants' credentials than to the manner in which each candidate proposed to do the job-especially when one considers that they had the benefit of a prior determination that each of the interviews were qualified." *See Fischbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1184 (D.C. Cir. 1996).[7] This Court, therefore, will venture no further. Because plaintiff has failed to produce evidence—beyond cursory allegations of unfairness — of discriminatory intent, his first attack fails to pass muster.

Plaintiff's second argument is similarly anemic. He asserts that defendant's reasoning is pretexual because the panel did not satisfactorily "explain the reasons for passing Mr. Paulk over for the third vacant position." *See* Pl.'s Opp'n at 26. To say the least, this is insufficient to defeat summary judgment and, in any event, misconstrues the record. The panelists, though not able to point to a *single* interview response disqualifying plaintiff, cited myriad concerns about plaintiff's qualifications. Murphy, for example, raised concerns about plaintiff's expertise in the electrical field, *see* Def.'s Mot. Ex. 4 at 264:2-13 [Dkt. #18-4],[8] and Banks opined that plaintiff's skills were more

---

[7] Indeed "[i]n cases involving a comparison of the plaintiff's qualifications and those of the successful candidate, we must assume that a reasonable juror who might disagree with the employer's decision . . . would not usually infer discrimination on the basis of a comparison of qualifications alone. In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc).

[8] Plaintiff seeks to discount Murphy's statements because Murphy "deferred to Banks and Adeyemi" on the ultimate hiring decisions. *See* Pl.'s Opp'n at 23. I disagree. Regardless of

akin to those of an installer than an electrician, *see* Def.'s Mot. Ex. 6 at 215:2-13 [Dkt. #18-6]. Adeyemi testified to global concerns about plaintiff's interview performance and qualifications, and, noted in particular plaintiff's apparent confusion about specific wiring schematics. *See* Adeyemi Dep. at 150:1-151:21 ("There was one where [candidates] were wiring switching modules for emergency lights and [plaintiff] really didn't understand the schematic on it, so it had to be explained to him how it's wired up so that it would work in normal position and in emergency."). The panelists' inability to recall their precise reasoning speaks less to an effort to mask an unlawful motive and more to sloppiness in the interview process and the attrition of memory. Accordingly, the panelists' inability, when deposed months after their decision, to cite to a uniform reason for plaintiff's non-selection, is insufficient to show pretext in light of the clear logic of their choice. *See Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 26 (D.C. Cir. 2013) (finding no pretext where the panelists "were unable to clearly articulate the factors" supporting their decision).

   Plaintiff also argues that the HOB panelists engaged in past discriminatory conduct that is probative of their intent here. This argument is a red herring. Plaintiff relies on *Nusky v. Hochberg*, 723 F. Supp. 2d 229 (D.D.C. 2010) for the proposition that "evidence of an employer's past discriminatory or retaliatory behavior toward other employees . . . [may] be relevant to whether an employer discriminated or retaliated against a plaintiff." *Id.* at 233. However, as that case also points out, such evidence is

---

whether Murphy was ultimately responsible for the decision, his testimony is probative of his state of mind as the highest-ranking member of the panel.

"neither *per se* admissible nor *per se* inadmissible." *Id.* In determining whether it is more probative than prejudicial, Courts must assess "how closely related the evidence is to the plaintiff's circumstances and theory of the case," including the proximity in time to the events at issue. *Id.* (quoting *Sprint v. Mendelsohn*, 552 U.S. 379, 387-88 (2008)). Plaintiff here claims that Adeyemi's hiring of "6 temporary electricians to work on the Emergency Lighting Project in 2010," all of whom were African-American, is "probative of the Defendant's state of mind when it passed him over for the permanent position on the night shift." Pl.'s Opp'n at 17-18. Even putting aside the fact that this hiring occurred at least a year before the events at issue in this case, the circumstances are such that a reasonable jury could not conclude that discriminatory animus infected the panel's selection here. First, there is no indication that any of the applicants in the prior instance were Caucasian. Second, even assuming, *arguendo*, that some of the applicants were Caucasian, Adeyemi testified that he did not conduct any in-person interviews in 2010, but rather hired the electricians on the basis of their resumes and phone interviews. *See* Def's Reply to Pl.'s Opp'n to Def's Mot. for Summ. J. ("Def.'s Reply") Ex. 4 at 59:17-60:13 [Dkt. #31-4] ("Q: Did you talk to any Caucasian people that you can tell? A: I couldn't tell over the phone if they were Caucasian or not. Q: Did you meet any of the temporary electricians before you hired them face-to-face? A: No."). In any event, these past actions have no bearing on the case at bar, given that here, Adeyemi *selected* a higher- Caucasian electrician (Gallagher) and *rejected* an African-American electrician (Jones). As the Fourth Circuit sagely observed, "[f]rom the standpoint of a putative discriminator, it hardly makes sense to hire workers from a group one dislikes." *See*

12

*Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (citation and internal quotation marks omitted).

Undaunted by the lack of discriminatory evidence, plaintiff attempts to rely on inference to create a genuine issue of material fact. Plaintiff argues that he is entitled to an adverse inference based on the destruction of certain records—specifically, the interview scoring matrix, the interview answer sheet, and the panel's justification memorandum. *See* Pl.'s Opp'n at 7, 30-33. This Circuit has recognized negative evidentiary inferences arising from the negligent spoliation of potentially relevant. *See, e.g., Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2013) (finding a duty to preserve where future litigation was "reasonably foreseeable"); *Talavera v. Shah*, 638 F.3d 303, 311-12 (D.C. Cir. 2011) (allowing an adverse inference when negligent document destruction violated an EEOC regulation).

Here, defendants destroyed documents pertinent to the selection process despite a two-year preservation policy. *See* Pl.'s Opp'n Ex. 44 at 25 § 26(A) [Dkt. #23-44]. The existence of some evidence regarding the selection process, including the Vacancy Announcement, HR's referral list, and the candidates' job applications, militates in favor of limiting the inference, but not in denying the inference altogether.[9]  Under the circumstances, plaintiff is entitled to a "permissive inference bounded by constraints of reason." *See Grosdidier*, 709 F.3d at 28 (allowing a weak adverse inference where other

_____

[9] *Talavera*, which plaintiff relies upon to support an expansive inference, is inapposite. Unlike in *Talavera*, where the non-discriminatory reason for the plaintiff's non-selection turned solely on her interview performance, plaintiff's interview here did not play the same pivotal role. *See* 638 F.3d at 312 (allowing an adverse inference because of the dearth of other relevant evidence).

evidence of the employer's reasoning survived). Plaintiff's proposed inferences—that the scoring matrix would have shown that he received "equal or better scores" compared to the selected candidates, that the defendants' proffered justifications were unsupportable and that the panelists intentionally deflated plaintiff's scores—are not reasonable light of the existing evidence. *See* Pl.'s Opp'n at 32. An inference of the magnitude plaintiff proposes would translate to directed verdict in his favor, notwithstanding clear evidence that each of the selected candidates had more formal training than plaintiff. A reasonable inference would instead be that the destroyed documents contained some evidence that plaintiff performed well during his interview. However, this inference alone is insufficient to create a genuine issue of material fact. Other evidence, including the selectees' credentials, the panel's selection of a Caucasian male with comparatively better training, and the panelists' sworn testimony that plaintiff was underqualified, would not permit a reasonable finding that the destroyed notes would have established pretext, let alone unlawful discrimination. *See von Muhlenbrock v. Billington*, 579 F. Supp. 2d 39, 45 (D.D.C. 2008) ("[T]he destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence – or utterly inadequate evidence- in support of a given claim to survive summary judgment." (alteration in original) (quoting *Chappell-Johnson v. Bair*, 574 F. Supp. 2d 87, 102 (D.D.C. 2008))). As such, plaintiff has not created a genuine issue of material fact that defendant's hiring decision was motivated by the specter of racial discrimination.

Plaintiff alleges, in the alternative, that his non-selection was due to unlawful retaliation for two protected activities: (1) his participation in the April 2012 OIG safety

investigation and (2) his June 2011 OCC complaint challenging his dismissal. *See* Compl. ¶¶ 37-44. As discussed above, because defendant has adduced a legitimate, non-discriminatory reason for plaintiff's non-selection, the issue before the Court is retaliation *vel non. See Jones*, 557 F.3d at 678 (applying the *Brady* framework to Title VII retaliation complaints). The crux of this Court's inquiry is "whether the employee's evidence creates a material dispute on the ultimate issue of retaliation either directly by [showing] that a [retaliatory] reason more likely motived the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). The court reviews the categories of relevant evidence—prima facie, pretext, and any other evidence plaintiff adduces—to determine whether "separately or in combination" they provide sufficient evidence of retaliation. *See Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002).

Plaintiff here retreats to his prima facie case, claiming that a strong temporal connection between his protected activities and his non-selection shows retaliation. *See* Pl.'s Opp'n at 18-20. This misconstrues the law. To prove retaliation, a Title VII plaintiff "must establish that his or her protected activity was a *but-for cause* of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (emphasis added). Under this standard, it is plainly insufficient for a plaintiff to demonstrate that retaliatory animus was *a cause* of the adverse employment action. The litmus test is whether "retaliatory animus was *the* cause." *Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013) (emphasis in original); *accord Warner v.*

*Vance-Cooks*, 956 F. Supp. 2d 129, 151 (D.D.C. 2013) (applying "traditional principles

of but-for causation" to plaintiff's Title VII retaliation claim).   Straining mightily to

show that his protected activity was the sole cause of his non-selection, plaintiff argues

that the six months between his participation in the OIG safety investigation and his non-

selection is clear evidence of retaliation. *See* Pl.'s Opp'n at 18-20.   Even if temporal

proximity were sufficient to prove causation, which it emphatically is not, [10] plaintiff's

protected activities are too remote in time from his non-selection to constitute definitive

proof of retaliation.   While an adverse personnel action that occurs "shortly" after

protected activity may give rise to an inference of causation, *Holcomb*, 433 F.3d at 903,

action that transpires more than three or four months after protected activity are less

likely to create causal inferences, *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,

273-74 (2001) (per curiam) (citing with approval circuit cases finding three and four

months to be too temporally remote to establish causation).   Here, plaintiff's activities

took place in the spring of 2011, approximately *six months* before his non-selection in

late December 2011.[11]   Construed in a light most favorable to plaintiff, this at most shows

that retaliation could have been a motivating factor, but not the sole cause of his non-

selection.   The more plausible cause of plaintiff's non-selection is his comparative lack

---

[10] Before *Nasser*, courts relied on a "temporal proximity" analysis, and used the time span
between the adverse employment action and the protected activity to provide evidence of
retaliation. After *Nasser*, courts in this Circuit view temporal proximity as persuasive, but not
dispositive, evidence of retaliation. *See U.S ex rel Schweizer v. Oce N. Am.*, 956 F. Supp. 2d 1,
16 (D.D.C. 2013) (finding that temporal proximity was circumstantial evidence of retaliation).
[11] Plaintiff argues that there was a strong temporal proximity because plaintiff's non-selection
occurred three weeks after he was restored to his position in November 2011. *See* Pl.'s Opp'n at
18-20. However, the "protected activity" at issue here is plaintiff's OIG testimony, and his
complaint to the Office of Compliance, *not* the outcome of his OCC settlement.

of credentials.[12]   For this reason, I find that the plaintiff has not provided sufficient evidence for a reasonable jury to conclude that his non-selection was retaliatory.

## II.   Termination

Plaintiff claims that his second adverse employment action, his termination in April 2012, was likewise motivated by discriminatory and retaliatory animus. *See* Compl. ¶¶ 38, 42, 46. These claims fail regardless of whether they are cast in terms of discrimination or retaliation. Defendant has offered a legitimate, nondiscriminatory reason for plaintiff's termination: budgetary shortfalls. *See* Def.'s Mot. at 23- 29. Faced with diminishing funds and fewer large scale projects, HOB terminated the *entire* night shift staff, which included three African-American and four Caucasian electricians. *See* Def.'s Mot. at 24-25. Citing to a purported $350,000 available to fund night shift temporary electrician projects in early 2012, plaintiff claims that the temporary electricians were eliminated "*despite* the availability of work and funding." *See* Pl.'s Opp'n at 41. Plaintiff does not make any showing, however, that this $350,000 was sufficient to fund the salaries of the seven temporary night shift employees for any significant amount of time. Nor does it undercut evidence in the record at in 2011 and

---

[12] Plaintiff's claims that HOB managers were aware of his participation in the investigation, and Superintendent Weidemeyer's testimony that they were "somewhat dismayed" by plaintiff's reinstatement in November 2011, does not overcome plaintiff's comparatively weaker credentials. *See* Pl.'s Opp'n at 18. Nor do plaintiff's bald assertions that the HOB managers made retaliatory threats against temporary electricians in other contexts create a genuine issue of material fact. *See* Pl.'s Opp'n at 16. Plaintiff has not shown how these vague and unsupported allegations are relevant to the alleged retaliatory conduct in *this* case.

2012, "AOC's budget was being reduced and managers were cutting staff." Riley Decl. ¶ 8.[13]

Plaintiff also argues that the Court should find discriminatory animus because defendant "took no steps to protect or mitigate the damage suffered by [plaintiff] and the other white electricians . . . while it assisted the black electricians" to obtain employment in other jurisdictions. *See* Pl.'s Opp'n at 43. Plaintiff does not offer a shred of evidence, beyond conclusory assertions that two of the terminated African-Americans were later employed by Adeyemi's friend, to show that defendant affirmatively assisted some, but not other, members of its temporary workforce. Plaintiff's claim is belied, moreover, by the fact that one of the terminated African-American employees did not obtain employment with the AOC after his termination. *See* Pl.'s Opp'n at 43.

As such, plaintiff's retaliation claim does not salvage his case. Defendant's decision to terminate the temporary electrician position was ostensibly due to a budgetary shortfall that affected *all* of the temporary electricians, not just those that participated in a protected activity. Plaintiff has made *no* showing that his protected activities in the spring of 2011, nearly a year prior to his termination, caused defendant to eliminate the temporary electrician position altogether. In short, plaintiff's evidentiary proffer—even when viewed in the light most favorable to plaintiff—is not sufficient to overcome the summary judgment bar.

---

[13] Plaintiff argues that Mr. Riley's declaration is inadmissible because he was employed by an AOC division that was "separate and distinct from the electrical division." Pl.'s Opp'n at 42. Plaintiff cites no evidence, however, showing that Mr. Riley, himself an Operations Manager at AOC, was incompetent to testify to AOC's comprehensive budget reductions.

## CONCLUSION

Accordingly, for all the foregoing reasons, defendant's Motion for Summary Judgment is **GRANTED**.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge